**Horace Eugene MARSHALL, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–73–78.**

Court of Criminal Appeals of Oklahoma.

Aug. 7, 1973.

Rehearing Denied Aug. 23, 1973.

John D. Montgomery, Hobart, for appellant.

Larry Derryberry; Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Charles P. Rainbolt, Legal Intern, for appellee.

OPINION

BLISS, Presiding Judge:

Appellant, Horace Eugene Marshall, hereinafter referred to as defendant, was charged by information in the District Court of Kiowa County, Oklahoma, with the crime of Murder in Concert with Another. Upon a trial before a jury defendant was found guilty of Manslaughter in the First Degree and was subsequently sentenced to serve a term of ten (10) years imprisonment, and from said judgment and sentence defendant has perfected a timely appeal.

Briefly stated, the evidence adduced at the trial reflects that the decedent, Joe Elix, was pronounced dead shortly after 2:00 a. m. on the morning of July 16, 1972,

after suffering mutliple stab wounds. The cause of death was determined to have been severe loss of blood and hemorrhagic shock resulting therefrom. The evidence further reflects there was a party at a private residence in Hobart, Kiowa County, Oklahoma, on the night in question. Around midnight some at the party left and went to Jerry Calip's bar in Hobart where two fights subsequently broke out. The deceased's multiple stab wounds were a result of the second fight.

Nolan Ayers testified that he was in said bar at approximately 12:30 a. m. on the morning in question when he was advised there was a fight occurring outside. Ayers went outside and, after stopping one fight, heard a further disturbance and saw the decedent swinging a belt over his head in a circular manner with "four guys around him." Defendant and Robert Earl Dorsey were among the four. Elix had just turned to run when Dorsey "hit him up under the arm" and stated "I know I got him good." Elix continued to run, and defendant ran up behind him and stabbed him three times in the back with a knife with a blade approximately four inches long. Defendant then backed up to where Dorsey and the others were standing. Elix ran into the bar and was subsequently taken to the local hospital where he died.

Dr. Bill H. Mask, the County Medical Examiner, then testified he was called to the hospital early on the morning of July 16, 1972, to examine and treat Elix. Elix had a severe laceration in the left axilla which perforated the brachial artery resulting in blood loss and shock. He also had several puncture wounds in the back area. The doctors were most interested in stopping the acute blood loss and therefore treated the major wound. Elix died during treatment. The doctor testified that the listed cause of death was acute hemorrhagic shock, secondary to lacerations of the brachial artery. However, the doctor further testified that Elix could have died from the back wounds.

Anthony Pitt, Kiowa County Deputy Sheriff, then testified he investigated the incident and subsequently on July 21, 1972, informed defendant's father that he had a warrant for the arrest of defendant on a charge of murder. Defendant was in Wichita Falls, Texas, and the father stated he would have defendant back the next morning. The father evidently produced defendant, and he was jailed on the morning of July 22, 1972. Pitt further testified that after advising defendant of his Miranda rights defendant admitted that he had been at the fight scene, that he had hit Joe Elix and that he had a knife with him at the time. Pitt also testified that on the night in question the street lights around the bar provided ample lighting. The State then rested.

Defendant produced numerous witnesses who testified that they were at the fight scene but did not see what happened. Defendant then took the witness stand in his own behalf. He testified that he was at the fight scene on the night in question, and that he, Robert Earl Dorsey and others were standing outside the bar and talking together. Joe Elix subsequently started an argument with defendant, and then Elix and Dorsey started arguing. Elix evidently went back in the bar and when he came out defendant testified that he struck Elix with his fist although he did have a large knife in his pocket. Defendant denied using the knife and further stated he did not see anybody strike Elix with a knife. Under cross-examination defendant admitted he borrowed the knife, a rather large one, at the party, stating "I thought I might need one . . ."

Dr. Wilson Mahone testified that he was the primary physician initially involved in the treatment of Elix. Dr. Mahone stated that the primary cause of death was the large wound under the arm which caused acute loss of blood and shock. Under cross-examination the doctor stated that the other wounds could have contributed to the acute loss of blood.

Frank Brady, an agent of the Oklahoma State Bureau of Investigations who specializes as a polygraph examiner, then testified that pursuant to an agreement of counsel the results of a polygraph test conducted by the witness were to be introduced into evidence. Brady testified that in his opinion he was unable to render a decision as to whether defendant was telling the truth or whether he was deceptive to relevant questions. Under cross-examination Brady stated that he did not feel defendant cooperated completely and further felt defendant attempted to control his breathing pattern during the test.

Defendant then rested, and the State called Thomas McMurray as a rebuttal witness. McMurray testified that he saw defendant shortly after the fight and that defendant told him that he thought he "cut him." Under cross-examination McMurray admitted that he had been taking some pills and had drunk some beer on the evening in question and that he was pretty high at the time.

■ Defendant's first proposition in error urges that as a black man he was denied a fair and impartial trial because there were no black or other minority citizens empaneled as jurors at the commencement of the term. With this contention we do not agree. A thorough examination of the record reflects no evidence whatsoever to support defendant's allegation. The mere fact that no black served on the jury panel, standing alone, is insufficient. Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759; Bennett v. State, Okl.Cr., 448 P.2d 253.

■ Defendant next contends the evidence presented at the trial was not sufficient to support the jury verdict and that the judgment was contrary to law. Again, we do not agree.

An examination of the record reflects that there was sufficient competent evidence from which the jury could reasonably conclude that defendant was guilty of manslaughter in the first degree. This Court has held on many occasions that it will not interfere with the verdict even though there is a sharp conflict in the evidence since it is the province of the jury to weigh the evidence and determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805; Ferrell v. State, Okl.Cr., 475 P.2d 825. Therefore, it is the opinion of this Court that defendant's second proposition in error is also without merit.

■ Defendant's last contention urges that the trial court committed reversible error in permitting cross-examination of the expert polygraph operator contrary to the stipulation of the parties. The record reflects the stipulation to have been as follows:

"On August 2, 1972, Case No. CRF-72-28, The State of Oklahoma vs. Horace Eugene Marshall, comes on for a hearing before the Honorable Clarence W. Hunter, Associate District Judge within and for Kiowa County, Oklahoma; the State present by John J. White, Assistant District Attorney and the defendant present in person and by his court-appointed attorney, Mr. John Montgomery. The defendant's personal request, and not on the recommendation of his attorney, to take a polygraph examination was heard. After a thorough inquisition by the Court and full explanation of defendant's rights, it was stipulated and agreed that the results of a polygraph test taken by Mr. Horace Eugene Marshall, the defendant, could be introduced as evidence in the preliminary hearing and also as evidence should he be bound over for trial before the Court or jury, whichever is had."

The polygraph operator was called as a defense witness. The questions asked by the State on cross-examination are as follows:

"Q. Were you able to form an opinion based on your experience in this field why this test was inconclusive?

"A. Yes, sir.

"Q. What is that opinion?

"A. The surroundings that the examination was given in, which was the area of the county jail, and I don't feel that the defendant cooperated

completely. I feel that he attempted to control one of the ------- his breathing pattern, during the test."

The defense counsel made no objection to the question concerning the operator's opinion. In fact, on redirect examination defense counsel questioned the operator further concerning his opinion.

It is therefore the opinion of this Court that the trial court committed no error, in light of the reasonable construction of said stipulation, in allowing the cross-examination. Defense counsel made no objection and raises the question of the impropriety of said cross-examination for the first time on appeal. In Davis v. State, Okl.Cr., 488 P.2d 932, this Court held:

"It is the general rule of law that objections must be made in a timely manner, and failure to so object constitutes waiver, and the defense thereby cannot be heard to later complain."

Defendant's last contention is therefore without merit.

In light of the records before us and for all the reasons set out above, we are of the opinion that the judgment and sentence appealed from should be, accordingly, affirmed.

BUSSEY, and BRETT, JJ., concur.